Dear Mayor Michel:
This office is in receipt of your request for an opinion of the Attorney General in regard to the firing of unclassified city supervisors. You indicate that departmental supervisors for the City of Marksville are unclassified, non-elected employees, not subject to civil service laws, and that the legislative charter is silent as to this issue. You state under the Lawrason Act the Mayor would be the proper city official for the hiring and firing of unclassified supervisors, and you ask who is the proper city official for firing unclassified, non-elected employees.
We reiterate our statement in Atty. Gen. Op. No 99-317 that the statutes for Lawrason Act communities do not apply to municipalities operating under a special legislative charter or when the special charter is silent on a subject. However, as you note, in Atty. Gen. Op. No. 94-71 this office stated that "while the provisions of the Lawrason Act are not controlling upon a municipality governed by a special legislative charter, these statutes can provide guidance by analogy."
This statement must be read in conjunction with the further observation therein that the provision in the special charter in question was identical to that addressed in opinions 93-398 and 93-398(A). In opinion 93-398 this office declared that Lawrason Act statutes do not apply to municipalities operating under a special legislative charter, and the Act's provisions do not apply where the special legislative charter is silent on a particular matter. Thereafter, opinion 93-398A, in reaffirming 93-398, stated no significant distinction was perceived between the mayor pro tempore's powers, functions and duties under the provision of R.S. 33:405 or the New Iberia Charter. It was then concluded, whether according to the Lawrason Act or the New Iberia Special Charter, a councilman, who is mayor pro tempore, may, when presiding as such over a meeting of the municipal council, continue to exercise his power to vote as a councilman.
Significantly, in Strawitz v. Town of Marksville,77 So.2d 597 (La.App 2nd Cir. 1955) the court states as follows:
 Here we take occasion to point out the obvious conclusion that the right and authority by the Mayor of Marksville in the deliberations of the Town Board or Council is derived from the law under which the municipality of Marksville operated and none other. For this reason we cannot be concerned with the provisions of general municipal incorporation statutes nor with specific and particular legislative charters which affect other municipalities, and we must look exclusively to the provisions of whatever legislative enactment created the Town of Marksville.
Therefore, we would conclude that the Lawrason Act can provide guidance by analogy when the Special Charter has similar provisions to that of the Act, but not when the special legislative charter is silent or provides to the contrary. You have stated that Marksville's special legislative charter is silent as to who in the City of Marksville has authority to "fire" unclassified supervisors.
By Act 126 of 1843, as amended by Act 82 of 1885, Marksville was incorporated under a special charter. The Charter specifies that there would be a Mayor and five Aldermen, "three of whom with the Mayor shall constitute a quorum to transact business", and "the said Mayor and Aldermen shall constitute a Board for the government of said town". Based upon these provisions, and with reliance upon Strawitz v. Town ofMarksville, supra, this office concluded that the Mayor had the authority to sit as a member of the board with the right to vote in the board's deliberations. Atty. Gen. Op. Nos. 83-458, 82-714A.
We must conclude that the converse would follow, and the Aldermen, having a vote with the Mayor for the government of said town, would act with the Mayor insofar as hiring and firing of department heads. We recognize that under the Special Charter the Mayor and Aldermen are empowered to enact by-laws, and that there may be provisions in the by-laws about which we are unaware relative to the authority to hire and fire department heads, and powers and duties of the Mayor. However, unless there is a pertinent provision to the contrary, we find it would be inconsistent to hold that the Mayor alone would be the proper city official for hiring and firing of unclassified department supervisors as provided in the Lawrason Act in light of the provisions of the Charter that makes the mayor and three aldermen a quorum to transact business.
We hope this sufficiently answers your inquiry, but if we can be of further assistance, do not hesitate to contact us.
Sincerely yours,
 RICHARD P. IEYOUB Attorney General
 By: BARBARA B. RUTLEDGE
Assistant Attorney General
RPI/bbr